**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **REINALDO RODRIGUEZ BOSCH,** by and through his Next Friend, Silvia Bosch Fernandez, | § | |
| ***Petitioner*,** | § | |
| **v.** | § | |
| **MARKWAYNE MULLIN,** Secretary, U.S. Department of Homeland Security; **MARY DE ANDA-YBARRA,** El Paso Field Office Director of Enforcement and Removal Operations, Immigration and Customs Enforcement; **U.S. DEPARTMENT OF HOMELAND SECURITY**; **TODD BLANCHE,** Attorney General; and **WARDEN** of ERO El Paso Camp East Montana, | § | **EP-26-CV-01861-DCG** |
| ***Respondents*.** | § | |

**ORDER REQUIRING SUPPLEMENT REGARDING NEXT FRIEND STATUS**

Silvia Bosch Fernandez ("Ms. Fernandez") seeks to step into Reinaldo Rodriguez Bosch's ("Mr. Rodriguez") shoes as his "next friend" to challenge Mr. Rodriguez's immigration detention.[1] For the reasons explained below, the Court will order Ms. Fernandez to supplement her request to proceed as Mr. Rodriguez's next friend by providing information that will allow the Court to determine whether she has standing.

---

[1] *See generally* Pet., ECF No. 1.

## I. BACKGROUND

Reinaldo Rodriguez Bosch is a Cuban national who entered the United States in August 1998.[2] Since then, Mr. Rodriguez has resided in the United States continuously, living with his mother—Ms. Fernandez.[3] He has never married, and he has no children.[4]

In September 2013, an Immigration Judge ordered Mr. Rodriguez removed.[5] The Government, however, wasn't able to remove him at that time, so it released him under an order of supervision (an "OSUP").[6] As far as the record reflects, Mr. Rodriguez lived under his OSUP until October 2025, when the Government re-detained him to execute his removal order.[7]

Since his re-detention, Mr. Rodriguez has filed multiple habeas petitions challenging the foreseeability of his removal and seeking his release.[8] He filed the first two in the Middle

---

[2] *See id.* at 2, 10.

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF system, rather than the cited document's internal pagination.

[3] *See id.* at 2; Fernandez Decl., ECF No. 1-5, at 3.

[4] *See* Fernandez Decl. at 3.

[5] *See* Pet. at 2.

[6] *See id.*

[7] *See generally id*.

[8] *Cf. Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) (explaining that, after a six-month, presumptively reasonable detention period, "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future").

District of Florida while detained at Florida Soft Sided Facility South (*a/k/a* "Alligator Alcatraz").[9] The court dismissed both petitions without prejudice.[10]

At some point in 2026, the Government transferred him to ERO El Paso Camp East Montana in El Paso, Texas ("Camp East Montana"),[11] where he remains today.[12] This proceeding is Mr. Rodriguez's third attempt at habeas relief. Unlike the first two attempts, though, Mr. Rodriguez isn't pursuing this case on his own behalf. Instead, Ms. Fernandez seeks to step in to Mr. Rodriguez's shoes and litigate this case for him as his "next friend."[13] According to Ms. Fernandez, Mr. Rodriguez "has a documented history of Paranoid Schizophrenia and Bipolar Disorder dating to approximately 2014."[14] Those illnesses have resulted in "many prior hospitalizations" and at least one involuntary commitment under

---

[9] *See* Petition for Writ of Habeas Corpus, *Rodriguez Bosch v. Warden*, No. 2:26-cv-01331, (M.D. Fla. Apr. 29, 2026), ECF No. 1; Petition for Writ of Habeas Corpus, *Rodriguez Bosch v. Mullin*, No. 2:26-cv-02004 (M.D. Fla. June 13, 2026), ECF No. 1.

[10] *See* Order, *Rodriguez Bosch v. Warden*, No. 2:26-cv-01331 (M.D. Fla. May 21, 2026), ECF No. 4; Order [hereinafter 1st Dismissal Order], *Rodriguez Bosch v. Mullin*, No. 2:26-cv-02004 (M.D. Fla. June 26, 2026), ECF No. 14 [hereinafter 2d Dismissal Order].

[11] *See* Pet. at 11 (alleging that "Petitioner is detained" at "ERO El Paso Camp East Montana").

[12] *See* Online Detainee Locator System, https://locator.ice.gov/odls/#/search (last visited Aug. 14, 2026) (indicating that the Government is currently detaining Petitioner at Camp East Montana).

[13] *See* Pet. at 6–8.

[14] Fernandez Decl. at 3; *see also* Flores Letter, ECF No. 1-7.

Florida's Baker Act.[15] His treatment regimen includes "ongoing psychiatric treatment" and medication "two times a day."[16]

Ms. Fernandez alleges that, "[b]eginning in or around May 2026, [she] observed a significant change in [her] son's condition."[17] "Over the phone [she] could tell that [Mr. Rodriguez] was incoherent,"[18] and he began refusing to speak with her or his attorney.[19] According to Ms. Fernandez, the facility staff at Camp East Montana informed her that Mr. Rodriguez "has refused to take his prescribed psychiatric medication while in [Immigration and Customs Enforcement] custody." Resultingly, she contends that Mr. Rodriguez "is currently unable to meaningfully communicate with, assist, or provide instructions to his attorneys" in connection with his habeas proceedings.[20] For that reason, she asks the Court to authorize her to litigate this case on Mr. Rodriguez's behalf.[21]

---

[15] *See* Fernandez Decl. at 3.

Florida's Baker Act authorizes certain individuals "to involuntarily commit someone for a mental health examination" where there is "reason to believe that the person has a mental illness and because of . . . [their] mental illness . . . [t]here is a substantial likelihood that without care or treatment the person <u>will</u> cause <u>serious bodily</u> harm to . . . herself or others in the <u>near future</u>, as evidenced by <u>recent behavior</u>." *Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118, 1126 (11th Cir. 2021) (quoting Fla. Stat. § 394.463(1)(b)(2) (internal quotations omitted)).

[16] *See* Fernandez Decl. at 3; *see also* Flores Letter.

[17] *See* Fernandez Decl. at 4.

[18] *Id.*

[19] *See id.* at 3–4; Plasencia Decl., ECF No. 1-6, at 2–3.

[20] Fernandez Decl. at 4.

[21] *See id.* at 4–5; Pet. at 6–8.

## II. APPLICABLE LAW

Federal courts may only hear and decide cases over which they have subject matter jurisdiction.[22] Even if left unraised by the parties to a case, federal courts are "duty-bound to examine the basis of subject matter jurisdiction sua sponte."[23]

To invoke federal subject matter jurisdiction, litigants "must establish the requisite standing to sue."[24] Unless a litigant establishes standing, federal courts may not hear or decide their case.[25] Under some circumstances, an individual may have standing to pursue a case on another person's behalf—that is, as their "next friend."[26] "Most frequently, 'next friends' appear in court on behalf of detained prisoners who are unable, usually because of mental incompetence or inaccessibility, to seek relief themselves."[27] "A 'next friend' does not himself become a party to the habeas corpus action in which he participates, but simply pursues the cause on behalf of the detained person, who remains the real party in interest."[28]

---

[22] *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513–14 (2009).

[23] *See Lane v. Halliburton*, 529 F.3d 548, 565 (5th Cir. 2008) (quoting *Union Planters Bank Nat'l Ass'n v. Salih,* 369 F.3d 457, 460 (5th Cir. 2004)).

[24] *See Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990).

[25] *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

[26] *Whitmore*, 495 U.S. at 162.

[27] *Id.*; *see also id.* ("Some early decisions in this country interpreted ambiguous provisions of the federal habeas corpus statute to allow 'next friend' standing in connection with petitions for writs of habeas corpus, and Congress eventually codified the doctrine explicitly in 1948." (citation modified)); *see also* 28 U.S.C. § 2242.

[28] *Whitmore*, 495 U.S. at 163.

Under *Whitmore v. Arkansas*, the "next friend" bears the burden to clearly establish their standing by satisfying two conditions.[29] "First, a 'next friend' must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action."[30] "[T]hat explanation must be supported by relevant proof"[31]—that is, "meaningful evidence."[32] "Second, the 'next friend' must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate."[33] Put differently, the "next friend" must show "some significant relationship with the real party in interest."[34]

## III. DISCUSSION

The Court will tackle the two *Whitmore* requirements in reverse order—first addressing whether Ms. Fernandez has satisfied the "significant relationship" requirement, then turning to whether she has shown that Mr. Rodriguez "cannot appear on his own behalf to prosecute th[is] action."[35]

---

[29] *Id.* at 164.

[30] *Id.* at 163.

[31] *Fanciullo ex rel. Fanciullo v. Hillhouse*, Case No. 6:23-cv-00286, 2023 WL 6388084, at *1 (E.D. Tex. June 30, 2023) (citing *Aguilar v. Bragg*, 463 F. App'x 333, 334 (5th Cir. 2012)), *report and recommendation adopted*, No. 6:23-cv-00286, 2023 WL 6387367 (E.D. Tex. Sept. 29, 2023).

[32] *See Whitmore*, 495 U.S. at 165–66; *see also Massie ex rel. Kroll v. Woodford*, 244 F.3d 1192, 1196 (9th Cir. 2001) ("The putative next friend must present 'meaningful evidence' that petitioner is suffering from a mental disease, disorder, or defect that substantially affects his capacity to make an intelligent decision." (citing *Whitmore*, 495 U.S. at 166)).

[33] 495 U.S. at 162.

[34] *Id.* at 164.

[35] *See supra* notes 30–34 and accompanying text.

### A. Ms. Fernandez satisfies *Whitmore*'s "significant relationship" requirement

As noted above, Ms. Fernandez is Mr. Rodriguez's mother, with whom Mr. Rodriguez has lived throughout his life.[36] Ms. Fernandez states that she is "dedicated to [her] son's best interests and [brings] this action because [she] believe[s] he is unable to protect his own rights at this time."[37]

Courts have determined that parents typically satisfy *Whitmore*'s "significant relationship" requirement absent an indication that they will not protect the incompetent's interests.[38] This case might appear to present an added wrinkle in that Mr. Rodriguez has refused to speak to Ms. Fernandez, which could imply that he doesn't want to pursue this litigation.[39] The fact that Ms. Fernandez and Mr. Rodriguez might disagree, however, doesn't

---

[36] *See supra* note 3 and accompanying text.

[37] Fernandez Decl. at 5.

[38] *See Limon v. United States*, No. 5:22-CV-33, 2022 WL 16953041, at *3 (S.D. Tex.) (citation modified), *report and recommendation adopted*, No. 5:22-CV-33, 2022 WL 16924118 (S.D. Tex. Nov. 14, 2022); *see also, e.g.*, *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004) (recognizing father as "next friend" of son held as an enemy combatant); *Gilmore v. Utah*, 429 U.S. 1012, 1013–14 (1976) (granting "next friend" standing to mother on behalf of prisoner).

*But see Anthem Life Ins. Co. v. Olguin*, 2007 WL 1390672, at *2 (E.D. Cal. May 9, 2007) (explaining that "a parent is not entitled to be the next friend of his or her child as a matter of absolute right" and noting that "the best interests of a child and the best interests of even a loving parent can conflict").

[39] *See* Fernandez Decl. at 3.

necessarily preclude standing.[40] After all, a finding that Mr. Rodriguez is incompetent could bear on his capacity to advocate for his own interests.[41]

What really matters for the purposes of *Whitmore*'s "significant relationship" requirement is that the next friend is dedicated to the incompetent's best interests.[42] Seeing no reason to question that Ms. Fernandez is dedicated to Mr. Rodriguez's best interests, the Court finds that she satisfies *Whitmore*'s "significant relationship" requirement.[43]

### B. Ms. Fernandez hasn't provided "meaningful evidence" to support her claim that Mr. Rodriguez is incompetent

But although Ms. Fernandez may have a "significant relationship" to Mr. Rodriguez, she hasn't demonstrated that Mr. Rodriguez is unable to prosecute a habeas action on his own behalf. (At least not yet.)

---

[40] For example, "many next-friend cases involve litigants wishing to prevent the execution of death row inmates against the inmates' own expressed wishes." Curtis A. Bradley, Ernest A. Young, *Unpacking Third-Party Standing*, 131 Yale L.J. 1, 63–64 (2021) (first citing *Whitmore*, 495 U.S. at 163, then citing *Demosthenes v. Baal*, 495 U.S. 731, 737 (1990), then citing *Gilmore v. Utah*, 429 U.S. 1012, 1012–13 (1976)).

[41] *See, e.g.*, *Magallon v. Livingston*, 453 F.3d 268, 271 (5th Cir. 2006) (explaining that, under Texas law, whether an individual has "the capacity to litigate" depends on whether they, "by reason of mental or bodily infirmity, [are] incapable of properly caring for their own interests in the litigation" (citing cases)); *see also infra* note 45 and accompanying text (explaining that an individual's domicile dictates which state's competency laws apply).

[42] *See Whitmore*, 495 U.S. 149, 163 (1990) ("[T]he 'next friend' must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate.").

*See also, e.g.*, *Gleason v. Pearson*, No. 7:12CV00619, 2013 WL 139478, at *5 (W.D. Va. Jan. 10, 2013), *aff'd* (Jan. 15, 2013) ("[T]o intervene against an inmate's wishes, the requirements of *Whitmore* must be met.").

[43] *See supra* notes 33–34 and accompanying text.

Ms. Fernandez asserts that next friend standing is appropriate here because (according to her) Mr. Rodriguez's illnesses have rendered him incompetent.[44] Preliminarily, whether an individual is "competent" for the purposes of pursuing litigation in federal court depends on their capacity to litigate under the law of their domicile.[45] Domicile is generally "established by physical presence in a location coupled with an intent to remain there indefinitely."[46] Ms. Fernandez hasn't identified Mr. Rodriguez's domicile, so it's unclear what legal framework applies to determine his competency.[47]

---

[44] *See* Pet. at 6–8.

[45] *See* FED. R. CIV. P. 17(b)(1) ("Capacity to sue or be sued . . . for an individual who is not acting in a representative capacity [is determined by] the law of the individual's domicile"); *see also Magallon*, 453 F.3d at 271 ("Individuals are incompetent for [Federal Rule of Civil Procedure] 17 purposes if they lack the capacity to litigate under the law of their domicile." (citation modified)).

*See also* FED. R. CIV. P. 81(a)(2) (explaining that the Federal Rules of Civil Procedure "apply to proceedings for habeas corpus" to the extent that a Rule is not duplicative of or inconsistent with "federal statute, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255 Cases"); *Rajpal S. v. Salinas*, No. 1:26-CV-184, 2026 WL 842106, at *1 (S.D. Tex.) (applying Rule 17 in the immigration habeas context), *report and recommendation adopted*, No. 1:26-CV-184, 2026 WL 841996 (S.D. Tex. Mar. 26, 2026).

[46] *In re Ran*, 607 F.3d 1017, 1022 (5th Cir. 2010) (citing *Texas v. Florida,* 306 U.S. 398 (1939)).

In other contexts, courts have determined that aliens can't establish a "lawful domicile" in the United States without "the ability, under the immigration laws, to form the intent to remain in the United States indefinitely." *See, e.g.*, *Castellon-Contreras v. I.N.S.*, 45 F.3d 149, 153 (7th Cir. 1995) (citing *Lok v. INS*, 681 F.2d 107, 109 (2d Cir. 1982)); *see also Lok*, 681 F.2d at 109 (concluding that an alien "established lawful domicile only when his intent to remain was legal under the immigration laws"); *Fuanya v. United States*, No. 21-CV-02191-REB-NYW, 2022 WL 1027149, at *4 (D. Colo. Apr. 6, 2022) ("[A]s concerns aliens, Congress intended that domicile may be established where the alien has an intent to remain which is consistent with—that is, lawful under—federal immigration law."). That, of course, raises the question of whether Mr. Rodriguez (as an alien ordered removed) is domiciled in the United States for the purposes of Federal Rule of Civil Procedure 17(b)(1). *See supra* note 45 and accompanying text; *see also Magallon*, 453 F.3d at 271 (applying Texas competency laws to a Mexican national on death row).

[47] *See generally* Pet.

Even if Ms. Fernandez had identified Mr. Rodriguez's domicile, it's unlikely that her submissions to date would carry her burden of establishing next friend standing.[48] True, courts have in some instances found that paranoid schizophrenia and bipolar disorder diagnoses provide an "adequate explanation" for next friend standing.[49] Those cases, however, involve far better-developed factual records of incompetency than what Ms. Fernandez has provided here. In *Fanciullo ex rel. Fanciullo v. Hillhouse*, for example, the Eastern District of Texas determined that next friend standing was appropriate where "a recent competency evaluation . . . by [a] licensed psychologist" indicated that the detainee "suffer[ed] from schizophrenia with paranoid delusions" and that she "[couldn't] engage in reasoned choice regarding legal strategies and options."[50] Similarly, in *Page v. Hogans*, the Southern District of Mississippi found next friend standing appropriate where the purported next friend had provided evidence of the detainee's "long history of mental illness [including schizophrenia] and court-ordered commitments to state mental institutions."[51]

Here, by contrast, the only evidence that Ms. Fernandez provides to support her contention that Mr. Rodriguez is incompetent is:

(1) her own declaration;[52]

---

[48] *See supra* notes 29–32 and accompanying text.

[49] *See, e.g.*, *Fanciullo*, 2023 WL 6388084 (schizophrenia with paranoid delusions); *Page v. Hogans*, No. 3:15-CV-597-CWR-FKB, 2017 WL 11810133 (S.D. Miss. Sept. 5, 2017) (schizophrenia).

[50] *Fanciullo*, 2023 WL 6388084, at *1 (citation modified).

[51] *Page*, 2017 WL 11810133, at *2 (internal quotations omitted).

[52] *See generally* Fernandez Decl.

(2) the declaration of the attorney who represented Mr. Rodriguez in his previous habeas proceedings;[53] and

(3) an October 2025 letter from Mr. Rodriguez's psychiatrist, in which he lists Mr. Rodriguez's diagnoses and medication regimen, but doesn't provide any opinion about whether he's currently able to make reasoned legal decisions.[54]

These materials generally summarize Mr. Rodriguez's history of mental illness,[55] his apparent refusal to take his prescribed medication,[56] and his refusal to speak with either his mother or his attorney.[57]

The mere fact that Mr. Rodriguez has been diagnosed with mental illness doesn't necessarily establish that he is incompetent.[58] Nor does the fact that he may not wish to pursue

---

[53] *See generally* Plasencia Decl.

[54] *See generally* Flores Letter.

*See also Dillingham v. Emerson*, No. 118CV00507AWISABPC, 2020 WL 7050032, at *2 (E.D. Cal. June 12, 2020) (concluding that "letters from treating psychiatrists or psychologist[s]" are only probative if they "speak to the court's concern as to whether the person in question is able to meaningfully take part in the proceedings").

[55] *See* Fernandez Decl. at 3; Flores Letter.

[56] *See* Fernandez Decl. at 4; Plasencia Decl. at 2–3.

[57] *See* Fernandez Decl. at 4; Plasencia Decl. at 2–3.

[58] *See, e.g.*, *Elmore v. Dorchester Cnty.*, No. 2:24-CV-04456-DCN-MGB, 2026 WL 1740353, at *3, 5 (D.S.C.) (concluding that purported next friend "failed to show that [detainee] [was] incompetent" despite the fact that detainee had been diagnosed with (among other things) "schizoaffective disorder, bipolar type"), *report and recommendation adopted*, No. 2:24-CV-4456 DCN, 2026 WL 1740450 (D.S.C. May 12, 2026); *Magallon*, 453 F.3d at 272 ("The question . . . is not whether [a litigant] is mentally ill. Rather, it is whether [the litigant] can care for his own interests in th[e] litigation." (citation modified)).

*See also United States v. Maxton*, No. 13-CR-00411-PAB, 2013 WL 6800695, at *1 (D. Colo. Dec. 24, 2013) ("Mental illness alone does not necessarily equate with incompetence."); *Liciago Tirado v. Klopotoski*, No. CIV.A. 09-814, 2010 WL 653092, at *3 n.7 (E.D. Pa. Feb. 18, 2010) ("Just because one is under psychiatric treatment does not mean that one is incompetent." (citation modified)).

further legal action.[59] In the past four months, Mr. Rodriguez has litigated two other habeas petitions on his own behalf (one with counsel, one without).[60] Although neither petition ultimately succeeded, it doesn't appear that his lack of success was due to his alleged inability to make reasoned legal decisions because of his psychiatric condition.[61] And while Ms. Fernandez alleges that Mr. Rodriguez's condition has deteriorated since he filed those two petitions,[62] the Court can't be sure whether his choice not to communicate with his mother or attorney reflects his incompetence or an "intelligent decision" to discontinue his legal battles.[63]

None of this is to say that Ms. Fernandez can't or won't demonstrate that next friend standing is appropriate here—she just hasn't yet produced "meaningful evidence" of Mr. Rodriguez's incompetence.[64] The Court will allow her an opportunity to supplement the record to provide such "meaningful evidence." If, however, she fails to do so, the Court will have no choice but to dismiss this case for lack of standing.[65]

---

[59] *See, e.g.*, *Whitmore*, 495 U.S. at 165 (concluding that purported next friend failed to establish that prisoner's abandonment of death penalty appeal was the product of "a mental disease, disorder, or defect" rather than "an intelligent decision" for purposes of Arkansas competency law).

*See also Rees v. Peyton*, 384 U.S. 312, 314 (1966) (concluding that whether a litigant is competent to abandon further litigation hinges on "whether he has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation").

[60] *See generally* 1st Dismissal Order; 2d Dismissal Order.

[61] *See* 1st Dismissal Order at 4 (denying petition because Mr. Rodriguez was "apparently responsible for stalling his own departure"); 2d Dismissal Order at 4 (similar).

[62] *See* Fernandez Decl. at 4.

[63] *See supra* note 59 and accompanying text.

[64] *See supra* note 32 and accompanying text.

[65] *See supra* note 25 and accompanying text.

## IV. CONCLUSION

For the above reasons, the Court **ORDERS** Ms. Fernandez to supplement her request to proceed as Mr. Rodriguez's next friend.

The Court thereby **ORDERS** that, no later than **Friday, September 4, 2026**, Ms. Fernandez must **FILE** a brief containing:

(1) an identification of Mr. Rodriguez's domicile for the purposes of assessing his capacity to sue, with citation to legal authority;[66] and

(2) an analysis of why (as Ms. Fernandez suggests) Mr. Rodriguez lacks the capacity to sue under the laws of his domicile, with citation to legal authority and supporting documentation.

If the brief and/or supporting documentation contain sensitive information, Ms. Fernandez **MAY MOVE** to file materials under seal.[67]

The Court **RESERVES RULING** on the "Motion for Order to Show Cause" (ECF No. 3) until after the Court determines whether next friend standing is appropriate under the circumstances.

---

[66] *See supra* note 46.

[67] *See* W.D. TEX. L.R. CV-5.2 (setting forth procedures for filing documents under seal).

The Court does not now take any position on whether it would grant such a motion (whether in whole or in part). *See, e.g.*, *I F G Port Holdings, L.L.C. v. Lake Charles Harbor & Terminal Dist.*, 82 F.4th 402, 410 (5th Cir. 2023) ("When a party seeks to file material under seal, the judge must undertake a case-by-case, document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure . . . ." (citation modified)).

Now that the Senate has confirmed Respondent Todd Blanche to serve as Attorney General of the United States,[68] the Court **DIRECTS** the Clerk of Court to **REMOVE** the word "Acting" from Attorney General Blanche's title on CM/ECF.

Finally, the Clerk of Court **SHALL MAIL** a copy of this Order to:

Reinaldo Rodriguez Bosch
ERO El Paso Camp East Montana
6920 Digital Road
El Paso, TX 79936

**So ORDERED and SIGNED this 14th day of August 2026.**

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

[68] *See, e.g.*, Riley Rogerson et al., *Senate confirms Blanche as attorney general*, Politico (Aug. 8, 2026, at 4:33 ET), https://www.politico.com/live-updates/2026/08/07/congress/todd-blanche-senate-confirmation-01029751 (last visited Aug. 10, 2026).