**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **REINALDO RODRIGUEZ BOSCH,**<br><br>***Petitioner*,**<br>**v.**<br><br>**MARKWAYNE MULLIN,** Secretary, U.S. Department of Homeland Security; **MARY DE ANDA-YBARRA,** El Paso Field Office Director of Enforcement and Removal Operations, Immigration and Customs Enforcement; **U.S. DEPARTMENT OF HOMELAND SECURITY**; **TODD BLANCHE,** U.S. Attorney General; and **WARDEN** of ERO El Paso Camp East Montana,<br><br>***Respondents*.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **EP-26-CV-01861-DCG** |

**ORDER GRANTING PETITION**

Petitioner Reinaldo Rodriguez Bosch ("Petitioner") challenges his immigration detention while the government facilitates his removal from the United States.[1] Among other things, Petitioner argues that the amount of time he's spent in detention—coupled with uncertainty regarding when (or whether) he'll be removed from the country—requires his release.[2] Respondents, however, insist that Petitioner's continued detention is a product of Petitioner's refusal to comply with removal and is therefore lawful.[3]

---

[1] *See generally* Pet., ECF No. 1.

[2] *Id.* at 12–15, 17–18; Pet'r Reply, ECF No. 10, at 1–3.

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF system, rather than the cited document's internal pagination.

[3] Resp., ECF No. 9, at 1, 4.

For the following reasons, the Court **GRANTS** the Petition **ORDERS** Respondents to release Petitioner from custody.

## I. INTRODUCTION

Petitioner is a Cuban citizen[4] who is subject to an order of removal that became final in September 2013.[5] That removal order triggered a mandatory 90-day detention period while the government sought to remove him.[6] The government, however, didn't remove Petitioner at that time, presumably because:

(1) Cuba wouldn't accept Petitioner;[7] and

(2) the government hadn't identified a third country—that is, a country other than Cuba—that would accept Petitioner either.

The government therefore released Petitioner under an order of supervision (an "OSUP").[8]

In October 2025, the government revoked Petitioner's OSUP and took him back into custody to facilitate his removal.[9] Unable to deport Petitioner to Cuba, the government shifted their focus to third-country removal to Mexico, which the government alleges has been unsuccessful due to Petitioner's noncompliance.[10] Petitioner counters that Mexico has refused to accept him at all because of his "psychiatric condition"—namely, paranoid schizophrenia and

---

[4] Pet. at 10.

[5] *Id.* at 2; *see* Resp. at 1; Urquidi Decl., ECF No. 9-1, at 1.

[6] *See infra* notes 22–23 and accompanying text.

[7] Urquidi Decl. at 2; Pet'r Reply at 1–2.

[8] Pet. at 2.

[9] *Id.*

[10] *See* Resp. at 1–2; Urquidi Decl. at 1–2.

bipolar disorder.[11] Petitioner also alleges that he "inquired about removal to Guyana" instead, but "ICE informed Petitioner that his criminal history precludes Guyana from accepting him."[12] Respondents report that although the government "has been actively working on removal to a third country other than Mexico[,] [t]here are no updates currently."[13]

Two statutory provisions could conceivably authorize Petitioner's detention here: 8 U.S.C. § 1231(a)(1)(C) and 8 U.S.C. § 1231(a)(6).

First, in certain circumstances, Section 1231(a)(1)(C) authorizes the government to detain noncitizens who fail to comply with removal orders.[14] But it doesn't apply here. Although the government argues that Petitioner has thwarted his own removal by refusing to go to Mexico, it hasn't taken the necessary steps to invoke its authority to detain Petitioner under Section 1231(a)(1)(C).[15]

With that off the table, the only remaining question is whether 8 U.S.C. § 1231(a)(6) authorizes the government to detain Petitioner—which depends on whether his removal is

---

[11] Pet. at 2–3; Medical R., ECF No. 1-7, at 2.

[12] Pet. at 4.

[13] Urquidi Decl. at 2.

[14] *See infra* Section II.B.3.

[15] *See infra* Section II.C.1.

reasonably foreseeable.[16] Here, Respondents don't appear to have a timeline for Petitioner's removal,[17] which makes for straightforward determinations that:

(1) removal is not reasonably foreseeable; and (thus)

(2) detention is not authorized by 8 U.S.C. § 1231(a)(6).[18]

With neither statutory provision authorizing Petitioner's detention, the Court will order Petitioner's release.

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241, a person in immigration detention can challenge detention as unlawful by filing a petition for a writ of habeas corpus.[19] To prevail, the petitioner must show by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States."[20]

---

[16] *See, e.g.*, *Khoury v. Garite*, 838 F. Supp. 3d 670, 677 (W.D. Tex. 2026).

[17] *See infra* notes 75–77 and accompanying text.

[18] *See infra* Section II.C.2.

[19] 28 U.S.C. § 2241(c); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001) (citing 28 U.S.C. § 2241(c)(3)).

[20] *See* 28 U.S.C. § 2241(c); *Villanueva v. Tate*, 801 F. Supp. 3d 689, 696–97 (S.D. Tex. 2025) (first quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); and then citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)).

## B. Relevant Authorities

### 1. 8 U.S.C. § 1231(a)(6)

8 U.S.C. § 1231(a) governs detention of noncitizens who are ordered removed from the country.[21] Once a removal order becomes final, Section 1231(a)(1) provides the government ninety days to secure removal.[22] This is known as the "removal period," during which detention is mandatory under the statute's plain text.[23]

As this case illustrates, though, not all noncitizens are removed during the removal period. Once the ninety-day removal period expires, Section 1231(a)(6) authorizes the government to continue detaining certain noncitizens. Notably, Section 1231(a)(6) doesn't expressly limit how long the government may detain the specified classes of noncitizens:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, *may be detained beyond the removal period* and, if released, shall be subject to . . . terms of supervision . . . .[24]

### 2. *Zadvydas v. Davis*

That doesn't mean that the government's Section 1231(a)(6) detention authority is unlimited, though. In *Zadvydas v. Davis*, the Supreme Court considered whether Section 1231(a)(6) gives the government unfettered discretion to decide whether and how long to

---

[21] *Zadvydas*, 533 U.S. at 682.

[22] 8 U.S.C. § 1231(a)(1)(A).

[23] *See id.* § 1231(a)(2)(A) ("During the removal period, the Attorney General *shall* detain the alien." (emphasis added)); *Zadvydas*, 533 U.S. at 683 ("After entry of a final removal order and during the 90-day removal period, however, aliens must be held in custody.").

[24] 8 U.S.C. § 1231(a)(6) (emphasis added).

continue detention.[25] There, the government continued detaining two noncitizens past the removal period due to their criminal histories.[26] The government, however, hadn't been able to find a country willing to accept either of them, which resulted in their prolonged detentions without a foreseeable end in sight.[27]

Although the Supreme Court acknowledged that Section 1231(a)(6) doesn't expressly limit the duration of detention, it nonetheless construed the statute to contain implicit limits.[28] Specifically, the Supreme Court "detected ambiguity in the statutory phrase 'may be detained,'" concluding that "while 'may' suggests discretion, it does not necessarily mean unlimited discretion."[29] The Supreme Court further reasoned that "if Congress had meant to authorize long-term detention of unremovable aliens, it certainly could have spoken in clearer terms."[30]

The government's interpretation of Section 1231(a)(6) would've authorized indefinite detention[31]—which, according to the Supreme Court, would raise a "serious constitutional problem."[32] As the Supreme Court had previously explained, "due process requires that the

---

[25] *Zadvydas*, 533 U.S. 678.

[26] *Id*. at 684–86.

[27] *See id.*

[28] *Id*. at 682; *cf. Miller v. French*, 530 U.S. 327, 336 (2000) ("[W]here Congress has made its intent clear, 'we must give effect to that intent.'" (quoting *Sinclair Refin. Co. v. Atkinson*, 370 U.S. 195, 215 (1962))).

[29] *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018) (citing *Zadvydas*, 533 U.S. at 697).

[30] *Zadvydas*, 533 U.S. at 697.

[31] *Id*. at 692.

[32] *Id*. at 690; *see also Jennings*, 583 U.S. at 296 ("When 'a serious doubt' is raised about the constitutionality of an Act of Congress, 'it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'" (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932))).

nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."[33] As applied to Section 1231(a)(6):

(1) the statute's "basic purpose" is to "assur[e] the alien's presence at the moment of removal"; and

(2) if it's unlikely that the government will be able to remove a noncitizen within the foreseeable future, detaining them under Section 1231(a)(6) wouldn't serve that purpose; so

(3) interpreting Section 1231(a)(6) to authorize the government to indefinitely detain noncitizens whose removals aren't foreseeable would raise serious constitutional questions.[34]

To avoid those constitutional questions, the Supreme Court construed Section 1231(a)(6) to limit detention to a "reasonable time."[35] As for what constitutes a "reasonable time," the Supreme Court determined that detention is "presumptively reasonable" for six months.[36] After that 6-month period, "if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing or release the alien."[37]

---

[33] *Jackson v. Indiana*, 406 U.S. 715, 738 (1972); *see also Zadvydas*, 533 U.S. at 690 (citing *Jackson*, 406 U.S. at 738).

[34] *Zadvydas*, 533 U.S. at 690 ("A statute permitting indefinite detention of an alien would raise a serious constitutional problem.").

[35] *Id.* at 689.

[36] *Id*. at 701.

[37] *Jennings*, 583 U.S. at 299 (quoting *Zadvydas*, 533 U.S. at 701); *see also Zadvydas*, 533 U.S. at 699 ("Once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute.").

**3. 8 U.S.C. § 1231(a)(1)(C)**

A final authority to consider for the purposes of this Order is 8 U.S.C. § 1231(a)(1)(C), which provides that:

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.[38]

To invoke Section 1231(a)(1)(C), implementing regulations require the government to "serve the alien with a Notice of Failure to Comply" that advises the noncitizen of:

(1) "the provisions of [Section 1231(a)(1)(C)]";

(2) the penalties associated with a noncitizen's failure to comply with removal;

(3) "the circumstances demonstrating [the noncitizen's] failure to comply with the requirements of [Section 1231](a)(1)(C)"; and

(4) "an explanation of the necessary steps that the alien must take in order to comply with the statutory requirements."[39]

---

[38] 8 U.S.C. § 1231(a)(1)(C); *cf. Lema v. INS*, 341 F.3d 853, 857 (9th Cir. 2003) (observing that "the due process concerns that motivated the Supreme Court in *Zadvydas* do not apply when an alien may have the keys to freedom in his pocket" (citation modified)).

[39] 8 C.F.R. § 241.4(g)(5)(ii); *see also Glushchenko v. United States Dep't of Homeland Sec.*, 566 F. Supp. 3d 693, 708 (W.D. Tex. 2021) ("[W]hen DHS determines that removal needs to be extended under § 1231(a)(1)(C), it is required to serve the alien with a Notice of Failure to Comply that explains the relevant statutes and provides an explanation of the necessary steps that the alien must take in order to comply with the statutory requirements." (citation modified)).

### C. Analysis

As explained in *Moreno-Rodriguez v. Warden*, the undersigned Judge follows a two-step framework in cases involving both Section 1231(a)(1)(C) and Section 1231(a)(6):

(1) The Court first considers whether the government has properly invoked its authority to detain the noncitizen under Section 1231(a)(1)(C). If so, then detention is lawful, and the statutory inquiry ends there.

(2) If, however, the government has not properly invoked Section 1231(a)(1)(C), then the Court considers whether Section 1231(a)(6) authorizes detention. At this step, the Court analyzes whether removal is reasonably foreseeable under *Zadvydas*.[40]

The Court applies this framework below.

#### 1. 8 U.S.C. § 1231(a)(1)(C) doesn't authorize Petitioner's detention

The Court begins by considering whether Respondents have properly invoked Section 1231(a)(1)(C). As noted, serving a noncitizen with a Notice of Failure to Comply that meets the four regulatory requirements above is a prerequisite for the government to invoke that authority.[41] Yet despite alleging that Petitioner has been noncompliant,[42] Respondents never mention any Notice of Failure to Comply, nor is there any basis in the record on which the Court could conclude that they served Petitioner with one.[43]

---

[40] *Moreno-Rodriguez v. Warden*, --- F. Supp. 3d ---, 2026 WL 2904489, at *8 (W.D. Tex. Sep. 23, 2026) (Guaderrama, J.).

[41] *Louis v. ERO El Paso Field Office*, --- F. Supp. 3d ---, 2026 WL 3135891, at *4–6 (W.D. Tex. Oct. 20, 2026); *see supra* note 39 and accompanying text; *infra* note 44 and accompanying text; *see also Khan v. Liggins*, No. 26-CV-00088-ABA, 2026 WL 2013963, at *4 (D. Md. July 10, 2026) (concluding that Section 1231(a)(1)(C) did not authorize continued detention where the government "d[id] not allege that they ha[d] served Petitioners with any Notices of Failure to Comply under 8 C.F.R. § 241.4(g)(5), which would be required if the non-cooperation was a true impediment to removal").

[42] *See* Resp. at 1–2, 4.

[43] *See generally id.*; Urquidi Decl.

The government must follow its own regulations.[44] Simply put, even if Petitioner refused to comply with removal to Mexico—something he disputes[45]—and even if refusal to accept removal to Mexico was an "act to prevent removal" within the meaning of Section 1231(a)(1)(C)—an issue that the Court doesn't decide here[46]—the government hasn't followed the regulatory process to invoke that detention authority.[47] The Court once again holds that where the government does not properly follow the procedures required by 8 C.F.R. § 241.4(g)(5)(ii), Section 1231(a)(1)(C) doesn't authorize Petitioner's continued detention.[48]

The Court is aware that Petitioner previously brought two separate habeas cases in the Middle District of Florida, in which the court denied his habeas petitions because it found that Section 1231(a)(1)(C) *did* authorize detention.[49] Because Respondents never claimed that those

---

[44] *See, e.g.*, *United States v. Gutierrez*, 443 F. App'x 898, 903 (5th Cir. 2011) ("It is 'an unremarkable proposition' that an agency must follow its own regulations." (citing cases)); *Cerda-Espinosa v. Bondi*, 830 F. Supp. 3d 567, 584–85 (W.D. Tex. 2026) ("For re-detention to be constitutional, the government must have complied with both the applicable statutory provisions and its own regulations."); *Villanueva*, 801 F. Supp. 3d at 700 (collecting cases); *Moreno-Rodriguez*, 2026 WL 2904489, at *9 (applying this principle to Section 1231(a)(1)(C) and its enabling regulations).

[45] Pet. at 3–4; *see supra* note 11 and accompanying text.

[46] There is a split of authority on whether a noncitizen's refusal to accept removal to Mexico allows the government to invoke Section 1231(a)(1)(C). *Contrast, e.g.*, *Gaceran-Jimenez v. Marin*, No. 5:26-CV-01973-BFM, 2026 WL 2262177, at *4 (C.D. Cal. Aug. 5, 2026) (concluding that a noncitizen's refusal to affirmatively accept removal to Mexico "does not constitute noncooperation of a kind that would trigger a suspension of the removal period"), *with Milian Martin v. Warden*, No. 2:26-CV-2346-KCD-NPM, 2026 WL 2640671, at *2 (M.D. Fla. Sept. 8, 2026) (concluding just the opposite).

[47] *See supra* notes 39, 43 and accompanying text.

[48] *See, e.g.*, *Khan*, 2026 WL 2013963, at *4; *Moreno-Rodriguez*, 2026 WL 2904489, at *9 (holding that the government didn't properly invoke § 1231(a)(1)(C) where nothing in the record indicated it served the petitioner with a Notice of Failure to Comply); *Louis*, 2026 WL 3135891, at *6.

[49] *See Rodriguez Bosch v. Warden*, No. 2:26-cv-1331-KCD-NPM, 2026 WL 1429306, at *2 (M.D. Fla. May 21, 2026); *Rodriguez Bosch v. Mullin*, No. 2:26-cv-2004-KCD-NPM, 2026 WL 1844863, at *1–2 (M.D. Fla. June 26, 2026).

prior cases preclude *this* Court from granting habeas relief,[50] the Court need not give those decisions preclusive effect.[51] A district court *may* consider preclusion *sua sponte*, but only if (1) both cases are in the same district, or (2) all the relevant facts are in the record and uncontroverted.[52] Neither exception applies: the prior cases were in a different district,[53] and there's a factual dispute about the circumstances of the attempted removals to Mexico, especially whether Mexico refused to accept Petitioner.[54] Finally, even if an exception applied, it would

---

[50] *See generally* Resp. What's more, Respondents ignored the issue despite Petitioner flagging it in his Petition and arguing that preclusion does not apply. *See* Pet. at 4–6.

[51] *See Taylor v. Sturgell*, 553 U.S. 880, 907 (2008) ("Claim preclusion, like issue preclusion, is an affirmative defense."); *Sacks v. Texas Southern Univ.*, 83 F.4th 340, 344 (5th Cir. 2023) ("Res judicata is an affirmative defense. So Defendants bear the burden to plead and prove it." (citation omitted)); *McKithen v. Brown*, 481 F.3d 89, 104 (2d Cir. 2007) ("As such, the defense of claim and issue preclusion may be waived by the parties . . . a failure to plead an affirmative defense results in a waiver." (citation modified)); *Ferreira v. Ashcroft*, 382 F.3d 1045, 1048 n.1 (9th Cir. 2004) (applying these principles to an immigration habeas case), *overruled on other grounds by Ceron v. Holder*, 747 F.3d 773 (9th Cir. 2014); *see also* Fed. R. Civ. P. 8(c)(1) (listing res judicata as an affirmative defense); *Olya v. Garite*, No. EP-25-CV-00083-DCG, 2025 WL 3254931, at *3 & nn.30–31 (W.D. Tex. Oct. 14, 2025) ("The Rules Governing § 2254 Cases ('Habeas Rules'), which a court may apply to § 2241 cases, authorize courts to apply the Federal Rules of Civil Procedure ('FRCP') to the extent they do not conflict with the Habeas Rules." (citations omitted)).

*See also Keel v. Miss. Dep't of Corrections*, 3:21CV226-GHD-JMV, 2022 WL 1695780, at *2 (N.D. Miss. May 26, 2022) (explaining that habeas petitions "under § 2241 generally do not have preclusive effect on later petitions, as long as the petition does not attack the underlying conviction or sentence").

[52] *OneBeacon Am. Ins. Co. v. Barnett*, 761 F. App'x 396, 399 (5th Cir. 2019); *see also Mowbray v. Cameron County*, 274 F.3d 269, 281 (5th Cir. 2001) (similar).

[53] *See supra* note 49 and accompanying text.

[54] *Contrast* Pet. at 3 (alleging that Mexico refused to accept Petitioner); *with* Resp. at 1–2 (asserting that the reason removal was unsuccessful was Petitioner's refusal to comply); *see also* Pet. at 5–6 (arguing that the prior cases do not have preclusive effect because the facts now before the Court are materially different); Pet'r Reply at 5–6 (outlining disputed facts).

only make it "permissible"—but not mandatory—for the Court to consider preclusion,[55] and the Court declines to do so here. Therefore, the prior cases do not affect the outcome here.

**2. 8 U.S.C. § 1231(a)(6) doesn't authorize Petitioner's detention either**

Having determined that the government hasn't properly invoked Section 1231(a)(1)(C), the Court will now consider whether Section 1231(a)(6) authorizes Petitioner's detention—in other words, the Court will conduct a *Zadvydas* analysis.[56]

**a. Petitioner's detention is not presumptively reasonable**

*Zadvydas* first requires the Court to determine whether Petitioner's detention is presumptively reasonable.[57] This Court previously concluded that *Zadvydas*'s six-month presumptively reasonable detention period runs continuously from the date on which a removal order becomes final—irrespective of whether the noncitizen spends all or some of those six months in detention.[58]

Here, Petitioner's removal order became final in September 2013, meaning that his detention under Section 1231(a)(6) was presumptively reasonable through March 2014.[59] That

---

[55] *See OneBeacon*, 761 F. App'x at 399 (noting that "a *sua sponte* ruling is *permissible*" if an exception applies (emphasis added)); *cf. R J Reynolds Tobacco Co. v. FDA*, 96 F.4th 863, 875 (5th Cir. 2024) (explaining that when the exceptions apply, the Fifth Circuit "*may* raise preclusion *sua sponte*" despite it not being raised in or addressed by the district court (emphasis added)).

[56] *See supra* notes 34–37 and accompanying text.

[57] *See supra* notes 34–37 and accompanying text.

[58] *Khoury*, 838 F. Supp. 3d at 680 (concluding that "whether detention is presumptively reasonable must depend on when the removal order becomes final—not how long an alien has spent in detention"); *accord Abedi v. Carter*, --- F.4th ---, 2026 WL 3149141, at *26 (10th Cir. Oct. 21, 2026).

[59] *See supra* note 5 and accompanying text.

six-month period has long since passed, so Petitioner's detention is not presumptively reasonable.

**b. Petitioner's removal is not reasonably foreseeable**

Because Petitioner's detention isn't presumptively reasonable, the Court must now consider whether Petitioner's removal is reasonably foreseeable. As noted above, Petitioner bears the initial burden of providing good reason to believe that there is *not* a significant likelihood of removal in the reasonably foreseeable future.[60] While "'[g]ood reason' is not an onerous standard,"[61] it requires more than just "conclusory statements suggesting that he will not be immediately removed."[62] If Petitioner carries his burden, the burden then shifts to Respondents to rebut Petitioner's showing.[63]

---

[60] *See supra* note 37 and accompanying text.

Some courts have concluded that where (as here) the government re-detains a noncitizen after revoking their release, 8 C.F.R. § 241.13(i)(2) applies and places the initial burden on the *Respondent* to show that such a likelihood of removal does exist. *See, e.g.*, *Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("[U]pon revocation of supervised release, it is the [government's] burden to show a significant likelihood that the alien may be removed."); *accord Yan-Ling X. v. Lyons*, 813 F. Supp. 3d 1157, 1164 (E.D. Cal. 2025).

The Court need not resolve which burden-shifting framework applies to *Zadvydas* claims involving re-detention—even if *Zadvydas*'s burden-shifting framework (*i.e.*, the framework that is less favorable to Petitioner) applied, Petitioner's continued detention is unreasonable and not authorized by Section 1231(a)(6).

[61] *Mogos v. Thompson*, No. 5:26-CV-0740-JKP, 2026 WL 475079, at *4 (W.D. Tex. Feb. 13, 2026).

[62] *Andrade v. Gonzales*, 459 F.3d 538, 543–44 (5th Cir. 2006).

[63] *See supra* note 37 and accompanying text.

#### *i. Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future*

Petitioner carried his burden. He notes that his removal order became final in 2013, yet the government still hasn't been able to remove him to his home country of Cuba.[64] He also casts doubt on the government's ability to remove him to Mexico, alleging that Mexico has refused to accept him because of his mental illness.[65] Petitioner further alleges that he offered to go to Guyana, but the government told him that Guyana wouldn't accept him.[66] For those reasons, Petitioner argues that "no country is presently prepared to accept Petitioner," so removal is not reasonably foreseeable.[67]

Petitioner has now been detained for roughly a year,[68] yet there is no indication that the government currently has a viable path to remove him. These circumstances provide good reason to believe that there isn't a significant likelihood that the government will remove Petitioner in the reasonably foreseeable future.[69]

---

[64] Pet. at 2; Pet'r Reply at 2.

[65] Pet. at 3. Even disregarding the allegation that Mexico has refused to accept Petitioner, he notes that the government has attempted to remove him to Mexico multiple times, and those attempts have failed. *Id.* at 3–4; Pet'r Reply at 1–2.

[66] Pet. at 4.

[67] Pet'r Reply at 2.

[68] *See* Pet. at 2 (noting October 27, 2025 detention date).

[69] *See, e.g.*, *Khoury*, 838 F. Supp. 3d at 683 (determining that a petitioner carried his burden where he showed that the "removal process is in virtually the same place as it was" decades prior); *Suarez v. Chestnut*, No. 1:26-CV-05147 (EJD), 2026 WL 2547116, at *2 (E.D. Cal. Aug. 28, 2026) (concluding, under similar circumstances as this case, that "the fact that [a noncitizen] d[id] not consent to his removal to Mexico demonstrate[d] that there [wa]s no significant likelihood of removal in the reasonably foreseeable future"); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 722–23 (W.D. Wash. 2025) (determining that a petitioner carried his burden where "the process for procuring travel documents . . . continue[d] to be uncertain and protracted").

#### *ii. Respondents have failed to rebut Petitioner's showing*

Respondents, meanwhile, offer little to rebut Petitioner's assertion that his removal isn't foreseeable. The government's position is premised entirely on Petitioner's refusal to accept removal to Mexico.[70] But "[w]hether removal is reasonably foreseeable for *Zadvydas* purposes doesn't turn on whether the alien cooperates with removal efforts"—the latter is only relevant to detention under § 1231(a)(1)(C), not § 1231(a)(6).[71] If the government wished to rely on Petitioner's refusal to accept removal to Mexico as a basis to detain him, it needed to properly invoke Section 1231(a)(1)(C).[72] It didn't.[73]

Accordingly, the government's authority to detain Petitioner hinges on whether his removal is "significantly likely in the reasonably foreseeable future."[74] Respondents, however, concede that: (1) Cuba denied Petitioner's repatriation,[75] (2) removal to Mexico has thus far been unsuccessful,[76] and (3) although the government is considering removal to a different third

---

[70] *See* Resp. at 1–2, 4.

[71] *Moreno-Rodriguez*, 2026 WL 2904489 at *9; *see supra* note 40 and accompanying text.

[72] *See supra* notes 40–41 and accompanying text.

[73] *See supra* Section II.C.1.

[74] *See supra* Section II.B.2.

[75] Urquidi Decl. at 2.

[76] *Id.* at 2; Resp. at 1–2; *cf. Pablo Pablo v. Venturella*, --- F. Supp. 3d ---, 2026 WL 2294407, at *7 (W.D. Tex. Aug. 7, 2026) (quoting the government's admission that, under similar circumstances, "Mexico will not accept someone [for removal] who does not agree to go").

The Court need not resolve the parties' dispute about whether Mexico is willing to accept Petitioner. *See supra* notes 10–11. Either way, multiple removal attempts have failed, so by all indications, removal to Mexico isn't reasonably foreseeable.

country, "[t]here are no updates currently" on that front.[77] In other words, there is currently no concrete plan for Petitioner's removal.

Section 1231(a)(6) doesn't authorize the government to detain Petitioner indefinitely while it looks for a country that will accept his removal.[78] Under these circumstances, Petitioner's detention is unlawful and no longer authorized by statute.[79]

### D. *Sosnava Rodriguez v. Vergara* Does Not Affect Cases Under Section 1231

The Fifth Circuit's recent decision in *Sosnava Rodriguez v. Vergara* does not affect the Court's analysis.[80] *Sosnava Rodriguez* holds that noncitizens subject to *pre*-removal-order detention under 8 U.S.C. § 1225(b)(2)(A) are not entitled to a bond hearing.[81] But the opinion expressly indicates that the *Zadvydas* framework still applies to petitions challenging *post*-removal-order detention under 8 U.S.C. § 1231(a) (like the Petition here).[82]

The *Sosnava Rodriguez* court also asserts in passing that "the constitutional concerns addressed in *Zadvydas* differ markedly from those" where a noncitizen has not been legally admitted into the United States.[83] This Court does not read that statement to cast doubt on

---

[77] Urquidi Decl. at 2.

[78] *See Zadvydas*, 533 U.S. at 689.

[79] *Id.* at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.").

[80] *See* --- F.4th ---, 2026 WL 3181188 (5th Cir. Oct. 23, 2026) (en banc).

[81] *Id.* at *14.

[82] *See id.* at *12–13.

[83] *Id.* at *12 (citation modified).

whether *Zadvydas* applies at all to a noncitizen who entered the country without inspection (as opposed to one who entered legally and was later ordered removed).

As a preliminary matter, Petitioner alleges that he "*was* admitted into the United States,"[84] and Respondents never dispute that allegation.[85] Though it's possible that Petitioner wasn't using the word "admitted" as a term of art, there's no basis on this record from which the Court could conclude that he was not lawfully admitted. So the portion of *Sosnava Rodriguez* suggesting that *Zadvydas*'s constitutional reasoning might apply differently to unadmitted noncitizens simply has no bearing here.

More fundamentally, though, other cases confirm that *Zadvydas*'s framework applies equally to noncitizens who enter the country lawfully and are later ordered removed as it does to those who are not lawfully admitted. In *Clark v. Martinez*, the Supreme Court analyzed *Zadvydas*'s statement that "[a]liens who have not yet gained initial admission to this country would present a very different question."[86] The Supreme Court explained that *Zadvydas* merely reserved that question—a question that *Clark* answered: *Zadvydas* applies the same way for

---

[84] Pet. at 2 (emphasis added).

[85] *See generally* Resp.

[86] 543 U.S. 371, 378–79 (2005) (quoting *Zadvydas*, 533 U.S. at 682). That's the same statement that *Sosnava Rodriguez* cited in its discussion about *Zadvydas* in relation to lawful admission. *See* 2026 WL 3181188, at *12.

inadmissible noncitizens[87] (i.e., those who were not lawfully admitted).[88] That's because Section 1231(a)(6)'s "statutory text provides for no distinction between admitted and nonadmitted aliens."[89]

The *Sosnava Rodriguez* court argued that "the *constitutional* concerns addressed in *Zadvydas*" may be different from those involving noncitizens who are not lawfully admitted.[90] That was relevant there because *Sosnava Rodriguez* was a case about constitutional rights.[91] But the instant case is not. *Zadvydas* and *Clark*, though based on constitutional avoidance, are fundamentally about *statutory* detention authority—they hold that the Section 1231(a)(6) does not provide statutory authorization to detain noncitizens whose removals aren't reasonably foreseeable.[92] *Clark* expressly acknowledged that even if "the constitutional concerns that influenced [the Supreme Court's] statutory construction in *Zadvydas* are not present for

---

[87] *Clark*, 543 U.S. at 378–80.

[88] *E.g.*, *Zeratsion v. DHS*, No. SA-26-CV-01538-XR, 2026 WL 2256861, at *1 n.1 (W.D. Tex. Aug. 3, 2026) (explaining that *Clark* "extended [*Zadvydas*'s] holding to aliens who were never admitted and charged as inadmissible under 8 U.S.C. § 1182" (citation omitted)); *Hernandez-Carrera v. Carlson*, 547 F.3d 1237, 1252 (10th Cir. 2008) (similar); *see also* infra note 97 and accompanying text.

In general, an "inadmissible" noncitizen is one who has never been lawfully admitted to the United States. *E.g.*, *Pouhova v. Holder*, 726 F.3d 1007, 1010 n.3 (7th Cir. 2013) (citing 8 U.S.C. § 1182(a)). That said, some noncitizens who *are* lawfully admitted can later be deemed "inadmissible." *See, e.g.*, *Barton v. Barr*, 590 U.S. 222, 236 (2020). Regardless, the word "inadmissible" in the statute encompasses noncitizens who are "present in the United States without having been lawfully admitted." *Pouhova*, 726 F.3d at 1010 n.3.

[89] *Clark*, 543 U.S. at 379.

[90] 2026 WL 3181188, at *12 (emphasis added). The Court reads *Sosnava Rodriguez* as merely distinguishing *Zadvydas* from the constitutional situation of the petitioners in *Sosnava Rodriguez*, not as saying anything about how *Zadvydas* itself operates. *See id.*

[91] *See generally id.*

[92] *See supra* Section II.B.2; *Zadvydas*, 533 U.S. at 689–99; *Clark*, 543 U.S. at 379–80.

aliens . . . who have not been admitted to the United States . . . it cannot justify giving the *same* detention provision a different meaning when such aliens are involved."[93] So even if it were true that the constitutional concerns are different for different classes of noncitizens, the *statutory* outcome is the same.[94] The Fifth Circuit has reiterated that idea, holding that Section 1231(a)(6) "applies uniformly to all categories of aliens covered by the statute."[95] "Inadmissible" noncitizens are covered by the statute.[96] Petitioners who were not lawfully admitted fall into that category,[97] so *Zadvydas* applies.[98]

The bottom line is that *Sosnava Rodriguez* did not hold that *Zadvydas* is inapplicable to Petitioners who entered the country unlawfully. Nor could it have done so because the Supreme Court has held precisely the opposite.

### E. Scope of Relief

Because Section 1231(a) doesn't authorize Petitioner's continued detention, the Court will order his release.[99] *Zadvydas* counsels that "the alien's release may and should be

---

[93] *Clark*, 543 U.S. at 380.

[94] *Id.* at 378–80.

[95] *Tran v. Mukasey*, 515 F.3d 478, 482, 484 (5th Cir. 2008).

[96] 8 U.S.C. § 1231(a)(6).

[97] *See supra* note 88. If Petitioners who weren't lawfully admitted didn't count as "inadmissible," *contra supra* note 88, then it's questionable whether Section 1231(a)(6) would authorize their detention in the first place since it only applies to three categories of noncitizens, including "inadmissible" ones. *See Clark*, 543 U.S. at 377. But if Petitioners fell into one of the other two categories instead, then *Zadvydas* would still apply. *See Tran*, 515 F.3d at 484. Either way, *Zadvydas* governs.

[98] *See Clark*, 543 U.S. at 378–80; *Tran*, 515 F.3d at 482, 484.

[99] *See Zadvydas*, 533 U.S. at 699–700 (contemplating a noncitizen's release where detention is no longer authorized).

conditioned on any of the various forms of supervised release that are appropriate in the circumstances."[100] The Court directs Respondents to release Petitioner under a form of supervised release that is consistent with 8 U.S.C. § 1231(a)(3) and corresponding regulations.[101]

Respondents may continue to facilitate removal while Petitioner is released under supervision. However, Respondents may only:

(1) re-detain Petitioner under the authority of Section 1231(a)(6) in accordance with the procedures set forth under 8 C.F.R. §§ 241.4(*l*), 241.13(i);[102] or

(2) invoke the authority of Section 1231(a)(1)(C) to detain Petitioner in accordance with the procedures set forth under 8 C.F.R. § 241.4(g)(5).[103]

## III. CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner Reinaldo Rodriguez Bosch has shown by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States."[104]

The Court therefore **GRANTS** Petitioner's Petition for a Writ of Habeas Corpus (ECF No. 1).

---

[100] *Id.* at 700.

[101] *See* 8 U.S.C. § 1231(a)(3) ("If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."); *see also, e.g.*, 8 C.F.R. § 241.5 ("Conditions of release after removal period"); *id.* § 241.13(h) ("Conditions of release").

[102] *See* 8 C.F.R. § 241.4(*l*) (identifying the process by which the government may revoke a noncitizen's OSUP where they violate their conditions of release); *id.* § 241.13(i)(3) (identifying the process by which the government may revoke a noncitizen's OSUP to execute removal).

[103] *See id.* § 241.4(g)(5) (setting forth procedures relating to detaining noncitizens who fail to cooperate with the government's removal efforts).

[104] *See* 28 U.S.C. § 2241(c).

The Court thereby **ORDERS** Respondents to **RELEASE** Petitioner from immigration detention **UNDER SUPERVISION** **on or before November 1, 2026**.

The Court **FURTHER ORDERS** that Respondents shall notify the Court of Petitioner's release **by 5:00 PM Mountain Time on November 2, 2026**.

The Court **FURTHER ORDERS** that Respondents may only re-detain Petitioner under the authority of Section 1231(a)(6) in accordance with the procedures set forth under 8 C.F.R. §§ 241.4(*l*), 241.13(i).

The Court **FURTHER ORDERS** that Respondents may only invoke the authority of Section 1231(a)(1)(C) to detain Petitioner in accordance with the procedures set forth under 8 C.F.R. § 241.4(g)(5).

The Clerk of the Court shall **STRIKE** Respondents' "Response" (ECF No. 8) as erroneously filed.[105]

**So ORDERED and SIGNED this 29th day of October 2026.**

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

---

[105] As Petitioner points out, ECF No. 8 is littered with factual allegations that appear to contradict the facts of this case. *See* Pet'r Reply at 3–5 (explaining the inconsistencies and errors in ECF No. 8). For example, it references a temporary restraining order, *see* ECF No. 8 at 3, but none exists in this case. Some of the factual allegations in ECF No. 8 accuse Petitioner of crimes that he doesn't appear to have committed. *See* Pet'r Reply at 3–5. The government filed a corrected Response (ECF No. 9) the same day it filed ECF No. 8, so the Court suspects that the government merely filed the wrong document and then "corrected" its error by filing the right document immediately afterwards. Still, the government hasn't acknowledged the error. Because ECF No. 8 appears to be completely unrelated to this case and because it accuses Petitioner of unsavory acts, the Court will strike it.